IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:21-CV-7-FL


| | | |
|---|---|---|
| DANIEL FELIX; HOMELESS CATS OF HATTERAS ISLAND, NC; and NON-PROPERTY ANIMALS OF HATTERAS ISLANDS NC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| DOUG DOUGHTIE, Sheriff in his official and individual capacity; DONAVAN RUTH, in his official and individual capacity; DARE COUNTY, NORTH CAROLINA; ROBERT OUTTEN, Dare County Attorney, in his official and individual capacity; ROBERT WOODARD, Dare County Board of Commissioner Chairman, in his official capacity and individual capacity; WALLY OVERMAN, Dare County Board of Commissioner Vice Chairman, in his official and individual capacity; ROB ROSS, Dare County Board of Commissioner, in his official capacity and individual capacity; STEVE HOUSE, Dare County Board of Commissioner, in his official capacity and individual capacity; JIM TOBIN, Dare County Board of Commissioner, in his official capacity and individual capacity; DANNY COUCH, Dare County Board of Commissioner, in his official capacity and individual capacity; ERVIN BATEMAN, Dare County Board of Commissioner, in his official capacity and individual capacity; ANDREW WOMBLE, District Attorney, in his official capacity and individual capacity; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

JEFF CRUDEN, District Attorney, in his official capacity and individual capacity; JENNIFER BLAND, District Attorney, in her official capacity and individual capacity; JOSH STEIN, NC Attorney General, in his official capacity and individual capacity; ROY COOPER, NC Governor, in his official capacity and individual capacity; GOVERNOR MCCRORY, NC Governor, in his official capacity and individual capacity,

                           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

This matter comes before the court on defendants' motions to dismiss, (DE 18, 31, 37, 40), and on plaintiffs' motions to amend their complaint, for emergency injunctive relief, for court-ordered discovery prior to disposition of any motion to dismiss, and for extended time to complete service of process in conjunction with compelling defendants to disclose their registered service of process agents. (DE 28, 30, 35, 38, 44). The time for briefing the motions has expired, and in this posture the issues raised are ripe for ruling. For the reasons that follow, defendants' motions are granted, and plaintiffs' motions are denied.

## STATEMENT OF THE CASE

Plaintiffs, proceeding pro se, initiated suit on February 8, 2021, alleging that defendants[1] had violated their constitutional and civil rights through a wide array of conduct, running the gamut

---

[1] The defendants, through their motions to dismiss, have distinguished themselves into three groups: 1) the self-titled "Dare County defendants" comprised of Ervin Bateman ("Bateman"), Danny Couch ("Couch"), Dare County, North Carolina ("Dare County"), Doug Doughtie ("Doughtie"), Steve House ("House"), Robert Outten ("Outten"), Wally Overman ("Overman"), Rob Ross ("Ross"), Donavan Ruth ("Ruth"), Jim Tobin ("Tobin"), and Robert Woodard ("Woodard") (hereinafter collectively "Dare County defendants,") (DE 19); 2) the self-titled "District Attorney defendants" comprised of Jennifer Bland ("Bland"), Jeff Cruden ("Cruden"), and Andrew Womble ("Womble") (hereinafter collectively "district attorney defendants") (DE 38); and 3) defendants North Carolina Attorney General Joshua H. Stein ("Stein"), North Carolina Governor Roy Cooper ("Cooper"), and Governor McCrory ("McCrory"), former North Carolina Governor (herein collectively "state defendants").

from "gang stalking" and covering up the bombing of plaintiff Daniel Felix's ("Felix") home, to failing to prevent the killing of the local cat population and maliciously prosecuting plaintiff Felix for cyberstalking. (Compl. (DE 1) at 3-6).[2]  Plaintiff Felix[3] seeks ten million dollars on his and the animal plaintiffs' behalf, the restoration of his rights, and a declaration that his conviction for cyberstalking under N.C. Gen. Stat. 14-196.3 and the statute itself are unconstitutional.[4]

On March 15, 2021, the Dare County defendants filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), relying upon a brief filed in plaintiff's previous case against a similar set of defendants, Felix v. Dare Cty. Sheriff's Dept., No. 2:19-CV-30-BR (E.D.N.C. Sept. 26, 2019), and a copy of a feral cat ordinance challenged by plaintiff.  Plaintiff responded in opposition on March 25, 2021, to which the Dare County defendants replied on March 26, 2021.  Plaintiff subsequently filed instant motion to amend his complaint on March 29, 2021,[5] the amended version of which the Dare County defendants moved to dismiss the next day, March 30, 2021, on the same grounds as their previous motion.  On April 5, 2021, plaintiff filed what the court construes as a sur-reply to the Dare County defendants' reply.

[2]     Although other causes of action can be implicated, plaintiffs' complaint focuses on alleged constitutional and civil rights deprivations; therefore, the court construes plaintiffs' claims as arising primarily under 42 U.S.C. § 1983. Other causes of action will be discussed in the analysis herein where implicated.

[3]     As discussed in the analysis herein, plaintiff Felix does not have standing to raise claims on behalf of the other plaintiff entities, and the court dismisses those derivative claims for that reason.  Therefore, for ease of reference, the court refers to plaintiff in the singular to mean plaintiff Felix. Where relevant, plaintiffs Homeless Cats of Hatteras Island, NC and Non-Property Animals of Hatteras Islands NC are referred to as the "animal plaintiffs."

[4]     Plaintiff, as discussed further below, has brought a similar suit in this court previously, alleging that defendants Dare County Sheriff's Department, Doug Doughtie, Donavan Ruth, Jeff Cruden, Andrew Womble, District Attorney Bland, Josh Stein, and Roy Cooper had violated his constitutional rights for conduct similar to that alleged here. Complaint, Felix v. Dare Cty. Sheriff's Dept., No. 2:19-CV-30-BR (E.D.N.C. Sept. 26, 2019).  That action was dismissed on defendants' motions.  Felix v. Dare Cty. Sheriff's Dep't, No. 2:19-CV-30-BR, 2020 WL 1809156, at *10 (E.D.N.C. Apr. 8, 2020), aff'd in part, modified in part, 834 F. App'x 2 (4th Cir. 2021) (per curiam).  Plaintiff Felix also has another case before the court regarding a claim for flood insurance. See Felix v. Service Ins. Co., 2:20-CV-45-FL (E.D.N.C. filed July 2, 2020).

[5]     As set forth herein, the court construes plaintiff's motion to amend (DE 30) as a first amended complaint under Rule 15(a)(1).  As such the motion, in itself, is denied as moot.

In addition, on March 25, 2021, plaintiff filed the instant motion for emergency injunctive relief. Defendants did not respond to plaintiff's motion. Plaintiff followed this motion, on April 7, 2021, with the instant motion seeking certain discovery prior to disposition of any motion to dismiss. On April 12, 2021, plaintiff further filed the instant motion for extension of time to complete service of process and to compel certain defendants to provide the names of their registered service of process agents or for the court to provide that information. Finally, on April 28, 2021, plaintiff filed the instant additional motion for discovery, which seeks to compel defendants to "produce all the alleged electronic communications defendants claim to be the basis for plaintiff's cyberstalking" conviction. ((DE 44) at 5).

On April 16, 2021, the district attorney defendants filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). Three days later on April 19, 2021, the state defendants filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6). Plaintiff filed a unified response to these motions on May 5, 2021.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.[6] Plaintiff alleges that he has undergone

> an 8 year ordeal of cat and animal killings . . . , the July 3rd, 2017 bombing of his residence, . . . being held at gun point and threatened with murder in Aug[ust] of 2016, Hatteras NC community members attacking [him] for his political views as an environmentalist and animal advocate, and [the obstruction of] any and all attempts to receive a proper investigation into those matters and other corruption in Dare County.

---

[6] Because plaintiff's amended complaint appears to supplement rather than supersede plaintiff's original complaint, the court considers both complaints in the subsequent analysis.

4

(Compl. (DE 1) at 5). Defendants Doughtie, Ruth, Womble, Cruden, and Bland are alleged to "have engaged in and facilitated the protection of wealthy white drug dealers from criminal prosecution, . . . [to] have all tried to silence plaintiff for being a witness to these crimes, [to] have obstructed justice to cover up their roles in these crimes," and to have ignored evidence of a number of other crimes, including plaintiff's own sexual assault and the deaths of animals in front of plaintiff's home and elsewhere. (Id. at 7, 14, 31, 72; (DE 30) at 11-13).[7]

Specifically, defendants Doughtie and Ruth, Dare County Sheriff and deputy, are alleged to have orchestrated a scheme to falsely label plaintiff as mentally ill and to "gang stalk" him. (See Compl. (DE 1) at 5-13, 19-21). They additionally targeted plaintiff because of his partial deafness, which causes him to speak loudly, and his scoliosis, using each as evidence of plaintiff's mental illness. (Id. at 21-22). The Dare County defendants in conjunction with the district attorney defendants are alleged to have targeted plaintiff because of his animal rights advocacy and environmentalist political beliefs. (See, e.g., id. at 113-14).

Defendants Ruth, Doughtie, Womble, Cruden, and Bland are alleged to have conspired and arranged for plaintiff to be charged and convicted of cyberstalking, falsely,[8] to end plaintiff's public petition that alleged collusion between the Dare County Board of Commissioners, of which defendants Woodard, Overman, Ross, House, Tobin, Couch, and Bateman are members, and the Dare County Sheriff's Department. (Id. at 15, 22). Defendants Doughtie and Ruth also allegedly served plaintiff with wrongful, "unfounded trespass letters from private citizens" in an attempt to

---

[7]     Defendants Ruth and Doughtie are also alleged to be responsible for numerous delays in emergency responses to plaintiff's calls to 911 as well as outright disregard of some calls. (See, e.g., Compl. (DE 1) at 9, 10). They allegedly also informed plaintiff that further 911 calls by him or his family would result in their arrest if the call was for an event the responder did not consider an emergency. (Id. at 53).

[8]     Plaintiff asserts he was, in fact, the one cyberstalked and that defendants Doughtie, Ruth, and Cruden failed to act on such. (Compl. (DE 1) at 29).

intimidate him, (<u>id.</u> at 17), as well as threatening litigation against plaintiff, (<u>id.</u> at 89). Defendants Doughtie and Ruth allegedly repeatedly ignored or destroyed evidence of violence against animals and other crimes that plaintiff describes, deprived local cats of food, and implemented an ordinance[9] limiting plaintiff's ability to feed undomesticated cats. (<u>See, e.g.</u>, <u>id.</u> at 27, 36, 39-40, 45-46).

Defendants Cooper and Stein are also alleged to have been indifferent to plaintiff's numerous notifications of illegal activity committed around and against him, including that described above, as well as real estate fraud, false conviction of a friend, and opioid overdose deaths in the community. (<u>Id.</u> at 8, 12, 25-26, 54, 57-58, 68, 83, 116; (DE 30) at 18-19, 22-24). Plaintiff also avers that he informed defendant McCrory of the law enforcement conspiracy against plaintiff and other perceived violations of the law. (<u>Id.</u> at 56, 66, 99).

## COURT'S DISCUSSION

A. Animal Plaintiffs' Claims

"To meet the constitutional minimum for standing, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" <u>Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.</u>, 204 F.3d 149, 154 (4th Cir. 2000) (alteration in original) (quoting <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984)). The injury must be personal, meaning that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975); <u>see also</u> <u>People Organized for Welfare & Emp. Rts. (P.O.W.E.R.) v. Thompson</u>, 727 F.2d 167, 171 (7th Cir. 1984) (explaining that the alleged injury

---

[9]    This ordinance allegedly also allowed defendant Ruth to enter plaintiff's property without permission. (Compl. (DE 1) at 48).

must be "fairly describable as an injury personal to the plaintiff—a deprivation of <u>his</u> right—rather than a concern with another's injury").

Here, neither plaintiff nor the animal plaintiffs have standing to bring suit to remedy alleged injuries to the animal plaintiffs. <u>See</u> <u>Warth</u>, 422 U.S. at 499; <u>see also</u> <u>Miles v. City Council of Augusta, Ga.</u>, 710 F.2d 1542, 1544 n.5 (11th Cir. 1983) (explaining that even if animal "had such a right [under the First Amendment], we see no need for appellants to assert his right <u>jus tertii</u>"); <u>Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium</u>, 836 F. Supp. 45, 50 (D. Mass. 1993) (holding "Kama the dolphin lacks standing to maintain this action as a matter of law").

In addition, plaintiff, as a pro se litigant, cannot assert claims on behalf of other pro se litigants. <u>See</u> Local Civil Rule 5.2(b) ("[N]o self-represented party may appear on behalf of another self-represented party."). Likewise, the animal plaintiffs have not been shown to have capacity to sue in their own name under Federal Rule of Civil Procedure 17(b), nor may they appear pro se under the court's Local Rules. <u>See</u> Local Rule 5.2(b)(2) ("[A]ny . . . entity that is not a natural person cannot appear pro se and must be represented by an attorney in accordance with Local Civil Rule 83.1.").

In sum, the claims purportedly brought by and on behalf of the animal plaintiffs must be dismissed without prejudice for lack of standing, and for lack of capacity to proceed through the Federal Rules of Civil Procedure and this court's local rules.

B.    Defendants' Motions to Dismiss

1.    Standard of Review[10]

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint.    Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).    Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint,"  the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge."    Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"    Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff,"  but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

As a final note, the court is obliged to liberally construe filings by pro se litigants. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (explaining that a "pro se document is to be liberally construed"); United States v. Brown, 797 F. App'x 85, 89 (4th Cir. 2019).  However, "[d]istrict

---

[10]    Because the court does not reach any of defendants' arguments based on Rule 12(b)(2) or 12(b)(5), the court does not set forth or discuss the relevant standards of review for those defenses.

judges have no obligation to act as counsel or paralegal to <u>pro se</u> litigants." <u>Pliler v. Ford</u>, 542 U.S. 225, 231 (2004); <u>see also</u> <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985) ("District judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments.").  Further, pro se parties, like any other party, are required to adhere to the Federal Rules of Civil Procedure, the Local Civil Rules, and the orders of this court.  <u>See</u> <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993).

      2.      Analysis

            a.      Dare County Defendants' Motion to Dismiss

                  i.      Claim Preclusion

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008) (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 748 (2001)).  For claim preclusion to apply, there must have been "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." <u>Ohio Valley Env't Coal. v. Aracoma Coal Co.</u>, 556 F.3d 177, 210 (4th Cir. 2009).  And if claim preclusion applies, "then the judgment in the prior action bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." <u>Orca Yachts, L.L.C. v. Mollicam, Inc.</u>, 287 F.3d 316, 318 (4th Cir. 2002) (quotation omitted).  The doctrine, by "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate[,] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." <u>Montana v. United States</u>, 440 U.S. 147, 153-54 (1979).

(1)      Judgment on the Merits

A dismissal of an action when it is "with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to further action between the parties." Harrison v. Edison Bros. Apparel Stores, 924 F.2d 530, 534 (4th Cir. 1991) (quotation omitted). Specifically, Rule 41(b) explains that "[u]nless the dismissal order states otherwise, any dismissal not under [Rule 41(a)]—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

The court's previous order, as affirmed and modified by the United States Court of Appeals for the Fourth Circuit, dismissed plaintiff's claims against defendants Ruth and Doughtie with prejudice, as it did not state that the dismissal was without prejudice. Felix, 2020 WL 1809156, at *8 ("Sheriff Doughtie and Deputy Ruth's motion to dismiss for failure to state a claim will be granted."); see Felix, 834 F. App'x at 2-3 (explaining that "[t]he court's dismissal for lack of personal jurisdiction . . . should have been without prejudice" but that it would "affirm the remainder of the district court's dismissal for the reasons stated by the district court," that is, failure to state a claim). Accordingly, plaintiff's prior suit was resolved by a judgment on the merits cognizable for claim preclusion's first element.

(2)      Identity of Parties

Where a party is identical between two suits, claim preclusion's second element is easily met. Ohio Valley Env't Coal., 556 F.3d at 210. In the case of determining whether parties are in privity with one another, "the non-party must be so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." Martin v. Am. Bancorporation Ret. Plan, 407 F.3d 643, 651 (4th Cir. 2005) (quotation omitted).

There are three generally recognized categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be

10

bound by a prior adjudication: (1) a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action.

Id.

Here, a portion of the Dare County defendants plainly meet the identity of parties' requirement of claim preclusion: defendants Doughtie and Ruth were named defendants in the prior suit and the instant suit. However, defendants Dare County, Woodard, Overman, Ross, House, Tobin, Bateman, Couch, and Outten were not named explicitly as defendants in plaintiff's previous suit. The Dare County defendants argue that although those individual defendants were not explicitly named in plaintiff's initial suit, they should be considered in privity with parties to the previous suit such that they too may assert claim preclusion against plaintiff. Because the Dare County defendants do not meaningfully explain how the non-parties to the previous suit fit into one of the above categories and because the court concludes that dismissal of those defendants is appropriate under separate reasoning, the court assumes without deciding that defendants Dare County, Woodard, Overman, Ross, House, Tobin, Bateman, Couch, and Outten fail to meet the identity-of-parties element needed to invoke claim preclusion.

(3)     Same Cause of Action

This third element does not require "that the plaintiff in the second suit is proceeding on the same legal theory he or his privies advanced in the first suit" but rather requires that "the second suit arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Ohio Valley Env't Coal., 556 F.3d at 210 (quotation omitted); Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir. 1990) ("Consistent with the modern trend, we have adopted a transactional approach to the identity of claims questions—the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." (quotation omitted)). A transaction in this context means a "natural grouping or

common nucleus of operative facts" as viewed in light of "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir. 1999).

Here, the instant suit arises out of the same series of transactions as plaintiff's suit in Felix v. Dare County Sheriff's Department, No. 2:19-CV-30-BR. Plaintiff's amended complaint in the previous suit and the operative complaint in the instant suit share pages of identical text and are substantially similar — in time, space, and motivation — in the factual scenario they describe, specifically in reference to defendants Ruth and Doughtie. Compare (Compl. (DE 1) at 1-22; (DE 31) at 1-88), with Complaint at 1-48, Felix, No. 2:19-CV-30-BR (Sept. 26, 2019); Motion to Amend Complaint at 1-58, Felix, No. 2:19-CV-30-BR (Nov. 22, 2019). Where the two complaints differ, they do not do so in such a way that the common nucleus of operative facts of each suit are substantively altered. Compare, e.g., Complaint at 14-16, Felix, No. 2:19-CV-30-BR (Sept. 26, 2019), with (Compl. (DE 1) at 17-18 (adding descriptive heading not included previously)).

In sum, the elements for claim preclusion are met in regard to plaintiff's claims against defendants Ruth and Doughtie. Therefore, plaintiff is precluded by the final judgment in Felix, No. 2:19-CV-30-BR, from relitgating either claims against defendants Ruth and Doughtie raised in that suit or any claim against them that might have been presented in that suit. It follows then that plaintiff has failed to state a claim upon which relief against those two defendants may be granted in the instant suit, which arises from the same common nucleus of operative fact.

Plaintiff contests this conclusion, citing the United States Supreme Court's decision in Lawlor v. National Screen Service Corp., 349 U.S. 322 (1955), for the proposition that "res judicata does not bar a suit, even if it involves the same course of wrongful conduct as alleged earlier, so long as the suit alleges new facts or a worsening of earlier conditions." ((DE 33) at 12).

Lawler addresses the general legal principle that "res judicata does not bar claims that did not exist at the time of the prior litigation" and the specific principle that "a new factual development that gives rise to a fresh cause of action" may negate identity of the causes of action in the two suits. Union Carbide Corp. v. Richards, 721 F.3d 307, 314-155 (4th Cir. 2013) (citing Lawlor, 349 U.S. at 328); see also Crowe v. Leeke, 550 F.2d 184, 187 (4th Cir. 1977) ("[R]es judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action."). However, Lawler and related principles "do[] not mean that the parties are free to keep coming into court and litigating the same issues over and over." Crowe, 550 F.2d at 187. And this is exactly what plaintiff seeks to do. The "new" facts that plaintiff alleges arose after termination of his previous action, which relied on facts in pleadings amended November 22, 2019, either constitute the same harm, (see, e.g., (DE 33) at 5 ("Examples of still ongoing claims against Sheriff Doughtie and Deputy Ruth are: . . . Plaintiff has still not had his rights to freedom of speech restored."), or non-actionable "additional instances of what was previously asserted," Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 113 (2d Cir. 2000) (emphasizing the need for "legally significant acts occurring after the filing of a prior suit that was itself based upon earlier acts"), for which plaintiff could have obtained the prospective relief that he now seeks, cf. Meekins v. United Transp. Union, 946 F.2d 1054, 1058 (4th Cir. 1991).

The court, accordingly, dismisses plaintiff's claims against defendants Ruth and Doughtie with prejudice.

ii.     Statute of Limitations

Although plaintiff's complaint implicates a number of causes of action and legal theories, they are primarily controlled by a three-year limitations period. For example, the statutory limitations period for a § 1983 claim is borrowed from state law, meaning a three-year limitations

period in this instance.  See Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1161-62 & n.2

(4th Cir. 1991) (looking to North Carolina law); Miller v. King George County, 277 F. App'x 297,

298-99 (4th Cir. 2008) (explaining that statute of limitations applies to "§ 1983 suits challenging

the constitutionality of a state ordinance"); see also McCausland v. Mason Cty. Bd. of Ed., 649

F.2d 278, 279 (4th Cir. 1981) (stating the same for the other sections of the "Reconstruction Civil

Rights Acts" such as § 1985).   Similarly, because plaintiff's state law claims, if any, arise from

injury to his person or his rights and do not arise from contract, they would be controlled by a

three-year limitations period as well.  See N.C. Gen. Stat. § 1-52(5) (enumerating a three-year

limitations period for "for any other injury to the person or rights of another, not arising on contract

and not hereafter enumerated").[11]

Here, plaintiff filed instant complaint February 8, 2021, meaning that claims based on

conduct prior to February 8, 2018, are time-barred.  Much of the complained of conduct is alleged

to have occurred prior to February 8, 2018.  (See, e.g., Compl. (DE 1) at 5, 9-10 (detailing events

taking place in August 2016 and July 2017), 8 (discussing a call in October 2016), 15, 25, 27

(describing events taking place in the 1970s), 23, 110 (describing warrants issued in December

2017 and his arrest January 8, 2018), 37-38 (detailing events in February 2015), 45 (discussing

purported blackmail in January 2016), 68 (discussing conduct in December 2014), 72 (alleging

activity when plaintiff was 14-years old), 101 (describing a January 2015 email), 114-15

(describing purported inaction and killings of cats around June and December 2017).

---

[11]      Plaintiff's response confuses criminal statutes of limitations, which would potentially "bar prosecution of a felony," State v. Johnson, 275 N.C. 264, 271 (1969), with civil statutes of limitations, which control his ability to bring a civil claim asserting an allegedly constitutionally violative failure on the part of certain defendants to criminally prosecute certain cases.  (See, e.g., (DE 30) at 30 ("There are dozens of felony crimes with no statute of limitations detailed that defendants have abused their discretion to deny Plaintiff justice."); (DE 33) at 5 ("Plaintiff has had several felony crimes with no statute of limitations committed against him.")).

Further, the conduct that allegedly took place after February 8, 2018, does not clearly relate to the remaining Dare County defendants. (See, e.g., Compl. (DE 1) at 6 (alleging, in a conclusory manner, defendant Doughtie engaged in activity from 2009 to present), 7 (alleging that "threats and gang stalking . . . have been occurring on almost a daily basis from Jan[uary] 2018 to present as part of scheme created by Sheriff Doughtie, Deputy Ruth, and DA Cruden"), 11 (describing events involving Dare County Sheriff's Department "over an [sic] 10 year period"), 19 (alleging conduct by defendant Ruth that has kept him restricted to his home for the past three years), 59 (referring to purported conduct by defendant Stein in 2019), 80 (describing conduct of a non-party from December 2017 to June 2019), 83 (describing failure of 911 services and the Dare County Sheriff's Department to respond to events in September 2019), 86-87, 92 (asserting conduct by the district attorney defendants and inaction by the state defendants around the time of or prior to February 2019), 116 (describing inaction by the state defendants in response to the killing of cats on March 24, 2019, October 2019, and November 18, 2019). Accordingly, plaintiff's claims against defendants Dare County, Woodard, Overman, Ross, House, Tobin, Bateman, Couch, and Outten are time-barred.

Plaintiff argues that the continuing violation doctrine bars dismissal of his complaint on statute of limitations grounds. ((DE 30) at 33; (DE 33) at 4). However, the doctrine is concerned with "continual unlawful acts, not continual ill effects from an original violation," National Advert., 947 F.2d at 1166, nor with conduct giving rise to "entirely new violation[s]" or claims for relief, see A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011), "that are based on discrete acts of unconstitutional conduct," DePaola v. Clarke, 884 F.3d 481, 487 (4th Cir. 2018) (quotation omitted). See also Fitzgerald v. Seamans, 553 F.2d 220, 230 (D.C. Cir. 1977) ("[T]he mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong which tolls

the statute of limitations, for that is the purpose of any lawsuit and the exceptions would obliterate the rule."). Accordingly, plaintiff's allegations of separate, discrete constitutional violations by the Dare County defendants, excepting defendant Ruth and Doughtie, and their failure to remedy past wrongs against plaintiff do not constitute continuing wrongs for the purpose of the statute of limitations. (See, e.g., Compl. (DE 1) at 49 ("The Dare County Board in 2019 still has not advertised to the public or had any public hearing on the ordinance as it stands."); (DE 33) at 7 (contesting defendants' statute of limitations argument by stating that "plaintiff has still not had his rights to roam around in public places restored" and "plaintiff is still being subjected to the fear of further false prosecutions")).

Further, "the continuing wrong theory should not be applied to relieve a plaintiff from its duty of reasonable diligence in pursuing its claims." New Pulaski Co. Ltd. P'ship v. Mayor & City Council of Balt., No. 97-2118, 2000 WL 1005207, at *6 (4th Cir. July 20, 2000). Plaintiff has not demonstrated why he was not reasonably diligent in bringing his § 1983 claims at the time of the alleged violations that he asserts are part and parcel with later violations. See also Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 67 (4th Cir. 2015) ("The limitations period for a § 1983 claim begins to run when the plaintiff has 'a complete and present cause of action'—in other words, when it could have 'file[d] suit and obtain[ed] relief.'" (alterations in original) (quoting Wallace v. Kato, 549 U.S. 384, 387 (2007))). Plaintiff has not demonstrated that application of the continuing violation doctrine is appropriate in this instance.

In sum, the relevant statutes of limitation bar plaintiff's untimely claims against Dare County, Woodard, Overman, Ross, House, Tobin, Bateman, Couch, and Outten. Plaintiff's claims against these defendants are dismissed with prejudice.

### iii. Failure to State a Claim

Additionally, and alternatively, assuming the complaint could be construed as asserting claims against defendants Dare County, Woodard, Overman, Ross, House, Tobin, Bateman, Couch, and Outten for conduct arising within the statute of limitations period, plaintiff fails to plead a sufficient factual basis for those claims as it relates to those specific defendants.

For example, the complaint makes the blanket and undifferentiated allegation that all defendants have caused "gang stalking" even after filing of the September 26, 2019, complaint in the prior suit, without alleging supporting facts to draw a clear causal connection between that harm and the remaining Dare County defendants' conduct. (See Compl. (DE 1) at 117). Further, although named as a defendant, there are little to no specific factual allegations regarding defendant Dare County or its policies, and the complaint seemingly then relies on inactionable constitutional theories of respondeat superior, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 at (1978), or a general duty to protect and investigate, see Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause . . . .").[12] See also Gonzales, 545 U.S. at 768-69 ("[T]he framers of the Fourteenth Amendment and the Civil Rights Act of 1871, 17 Stat. 13 (the original source of § 1983), did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented . . . .").

---

[12] Plaintiff's citation to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), is inapt as Bivens creates a cause of action, in limited circumstances against federal officers. See generally Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017). Further, insofar as any state law claims remain after dismissal of plaintiff's federal law claims, the court declines to exercise supplemental jurisdiction over such claims. 28 U.S.C. § 1367(c)(3).

Plaintiff's allegations against the individuals of the Dare County Board of Commissioners and the county attorney are similarly sparse or require the court to make unreasonable conclusions, even assuming that such allegations were timely. For example, plaintiff bases his claim against these defendants primarily on the alleged fact that, at some indefinite time, they appeared in, and therefore sponsored according to plaintiff, "a community video . . . depict[ing] the Audubon Society and environmentalists as . . . 'AMERICAN TERRORISTS' and demand[ing] the ENDANGERED SPECIES ACT be repealed." (See, e.g., Compl. (DE 1) at 11 (capitalization in original)). Plaintiff asks the court to draw from this the inference that those defendants created a policy of deliberately ignoring alleged violations of plaintiff's constitutional rights, discriminated against him based on his political views, and sanctioned the killing of animals in the county. Such an inference is an unreasonable one without further properly pleaded factual matter and is insufficient to defeat a motion to dismiss for failure to state a claim.

In sum, the Dare County defendants' motion to dismiss is meritorious. Plaintiff's claims against defendants Doughtie and Ruth are barred by claim preclusion and therefore dismissed with prejudice. Similarly, plaintiff's claims against Dare County, Outten, Woodard, Overman, Ross, House, Tobin, Couch, and Bateman are time-barred and subject to dismissal with prejudice for that reason. Finally, even assuming plaintiff's claims against those defendants were not time-barred, he fails to plead sufficient factual matter to support those claims, requiring their dismissal alternatively under Rule 12(b)(6).

b.      District Attorney Defendants' Motion to Dismiss

The district attorney defendants contend that plaintiff's claims against them in their official capacity are subject to dismissal due to sovereign immunity and that plaintiff's claims against them in their individual capacity are subject to dismissal due to prosecutorial immunity. Because the

court agrees, it dismisses plaintiff's claims without prejudice. See generally S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for . . . any . . . defect in subject matter jurisdiction . . . must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

i.      Sovereign Immunity to Official-Capacity Claims

"[E]ach State is a sovereign entity in our federal system; and . . . it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Keller v. Prince George's County, 923 F.2d 30, 32 (4th Cir. 1991) ("An unconsenting state enjoys eleventh amendment protection against a private party's suit for damages."). Further, "any arm of the state is protected by such immunity." Keller, 923 F.2d at 32. "This immunity also applies to 'judgment[s] against a public servant in his official capacity' . . . because such suits against state officers 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Adams v. Ferguson, 884 F.3d 219, 224-25 (4th Cir. 2018) (first quoting Brandon v. Holt, 469 U.S. 464, 471-72 (1985); and then quoting Monell, 436 U.S. at 690 n. 55); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). However, the Supreme Court, in Ex parte Young, created "an exception to Eleventh Amendment immunity with respect to claims for prospective injunctive relief to remedy ongoing violations of federal law." Hutto v. S.C. Ret. Sys., 773 F.3d 536, 542 (4th Cir. 2014) (citing Ex parte Young, 209 U.S. 123 (1908)).

Here, plaintiff filed suit against defendant Womble, a district attorney, and defendants Bland and Cruden, assistant district attorneys, in their official capacities for, inter alia, monetary

damages. The court concludes that, under North Carolina law, these defendants are state officials and therefore afforded sovereign immunity to official-capacity suits.

The state's constitution provides that "[t]he General Assembly shall, from time to time, divide the State into a convenient number of prosecutorial districts, for each of which a District Attorney shall be chosen[,] . . . and [t]he District Attorney shall . . . be responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district." N.C. Const. art. IV, § 18 (emphasis added). State statutes provide similarly. See, e.g., N.C. Gen. Stat. § 7A-60 ("The State shall be divided into prosecutorial districts, as shown in subsection (a1) of this section. There shall be a district attorney for each prosecutorial district . . . ."); id. § 7A-63 ("Each district attorney shall be entitled to the number of full-time assistant district attorneys set out in this Subchapter to be appointed by the district attorney, to serve at the district attorney's pleasure. . . . An assistant district attorney shall take the same oath of office as the district attorney, and shall perform such duties as may be assigned by the district attorney."). The law announced by the state's courts confirms this conclusion. See, e.g., State v. Camacho, 329 N.C. 589, 595 (1991) ("[I]t must be remembered that the elected District Attorneys of North Carolina are constitutional officers of the State whose duties and responsibilities are in large part constitutionally and statutorily mandated."); see also Whitfield v. Gilchrist, 348 N.C. 39, 43 (1998) (describing what the State has authorized "its district attorneys" to do (emphasis added)).

Under the state's constitution and relevant statutes, as interpreted by North Carolina courts, North Carolina district attorneys are state officials, meaning that when they are sued in their official capacity, the true party in interest is North Carolina, which is immune to an unconsented suit. Compare, e.g., Carter v. City of Philadelphia, 181 F.3d 339, 347-355 (3d Cir. 1999) (finding that district attorney of Philadelphia's office was not an arm of the state entitled to Eleventh

Amendment immunity because, inter alia, "Pennsylvania's Constitution expressly defines District Attorneys as county rather than state officers"), with Laidley v. McClain, 914 F.2d 1386, 1392 (10th Cir. 1990) (finding "under Oklahoma law the district attorney is an arm of the state" and therefore entitled to Eleventh Amendment immunity).

Yet, insofar as the complaint could be construed to seek nonmonetary relief, the Ex parte Young exception is implicated. (See, e.g., Compl. (DE 1) at 122 ("Plaintiffs seek injunctive relief that they will submit to the Court. . . . Plaintiff Daniel Felix seeks restoration of his rights . . . ."); (DE 28) at 3 ("Plaintiff hereby requests the Court to grant him the changes to the wording and administration of the" "NC Cyber Stalking law"), at 3 (seeking repeal of "Dare County Cat Ordinance"), at 4 (requesting that the district attorney defendants "be suspended from their duties pending a full comprehensive investigation"), at 4 (seeking a moratorium on Hatteras Island cats being euthanized), at 5 (requesting that it be mandatory for all motorists to "stop and report any animals run over under penalty of law for leaving the scene of the accident"). However, the majority of the sought relief either lacks a plausible constitutional basis or does not have a sufficiently pleaded factual predicate indicating "some connection [by defendant-official] with the enforcement of the act" that allegedly violates federal law. Hutto, 773 F.3d at 550 (explaining that Ex parte Young "applies only where a party 'defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional' has 'some connection with the enforcement of the act'" (quoting Ex parte Young, 209 U.S. at 157)); see also Antrican v. Odom, 290 F.3d 178, 187 (4th Cir. 2002) ("[T]he Ex Parte Young exception does not apply to actions against State officials seeking to compel their compliance with State law."). Further, while the complaint alleges that the district attorney defendants were either directly or indirectly involved in his prosecution for cyberstalking, the relief sought for this allegedly unconstitutional act is either not targeted at ongoing action (that

is, the prior completed prosecution), Republic of Paraguay v. Allen, 134 F.3d 622, 628 (4th Cir. 1998) ("[T]he actual violation alleged is a past event that is not itself continuing . . . ."), or would draw the court into proceedings from which it has been directed to abstain, such as review of final state-court judgments or pending state court proceedings. See Adkins v. Rumsfeld, 464 F.3d 456, 463 (4th Cir. 2006) (explaining that "the Rooker–Feldman doctrine . . . prohibits lower federal courts from exercising appellate jurisdiction over final state-court judgments" (quotation omitted)); Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006) (explaining that the Supreme Court's decision in "Younger mandates that a federal court abstain from exercising jurisdiction and interfering in a state criminal proceeding").

In sum, the district attorney defendants, as sued in their official capacity, are immune from plaintiff's claims, and, therefore, the court lacks subject matter jurisdiction over plaintiff's official capacity claims against those defendants. Accordingly, the court dismisses those claims without prejudice.

ii.     Prosecutorial Immunity to Personal-Capacity Claims

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Graham, 473 U.S. at 165. However, "the Supreme Court [has] held that prosecutors are absolutely immune from damages liability when they act as advocates for the State." Savage v. Maryland, 896 F.3d 260, 268 (4th Cir. 2018) (citing Imbler v. Pachtman, 424 U.S. 409, 430-32 (1976)); see also id. ("The Supreme Court recognized that this immunity would leave the 'genuinely wronged' without a remedy against prosecutors acting for malicious or unlawful purposes[,] . . . [b]ut the importance of shielding prosecutorial decision-making from the influence of personal liability concerns, the Court concluded, outweighed that harm."). Such immunity does not apply where "a prosecutor is not acting as 'an officer of the

court,' but is instead engaged in other tasks, say, investigative or administrative tasks." Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009).

Here, plaintiff's claims against the district attorney defendants, to the degree they are based on those defendants' involvement in his prosecution, are barred by those defendants' absolute prosecutorial immunity.[13] On the other hand, insofar as plaintiff's claims are based on a failure to investigate or prosecute by the district attorney defendants, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).

As a whole, the complaint fails to state facts upon which subject matter jurisdiction over plaintiff's claims against the district attorney defendants may be based due to those defendants' applicable immunities to claims in their official and personal capacities. Alternatively, assuming those immunities were inapplicable to some of plaintiff's claims, he fails to state a claim upon which relief can be granted in regard to those claims. Accordingly, the court dismisses without prejudice plaintiff's claims against defendants Womble, Bland, and Cruden.

        c.        State Defendants' Motion to Dismiss

Plaintiff's claims against defendants Cooper, Stein, and McCrory are also purportedly brought against those defendants in their official and personal capacities. However, they, too, fail under the relevant standards of review.

        i.        Official Capacity

Applying the aforementioned Eleventh Amendment jurisprudence, it is clear that defendants Cooper and Stein, as sued in their official capacity, are the State of North Carolina's

---

[13]     Additionally, a successful malicious prosecution claim under § 1983 requires that "defendant have seized plaintiff pursuant to legal process that was not supported by probable cause and that the criminal proceedings have terminated in plaintiff's favor." Burrell, 395 F.3d at 514 (emphasis added) (quotation omitted).

"alter egos acting in their official capacities," and therefore "the Eleventh Amendment bars a suit by private parties to recover money damages from" them in that capacity. See, e.g., Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1138 (4th Cir. 1990); see also Hafer v. Melo, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of . . . [§ 1983] suit[s] because they assume the identity of the government that employs them."). Similarly, the conduct for which defendant McCrory is alleged to be responsible also took place while he acted in his official capacity, (see, e.g., Compl. (DE 1) at 121), and he, too, would enjoy sovereign immunity from plaintiff's claims for money damages.

As to plaintiff's injunctive claims, Ex parte Young's exception is inapplicable to his claims against defendants Cooper and McCrory because "a governor cannot be enjoined by virtue of his general duty to enforce the laws." Hutto, 773 F.3d at 550. Even assuming the North Carolina Attorney General, here, defendant Stein, does have the requisite special relation to the North Carolina statute criminalizing cyberstalking,[14] plaintiff fails to show that "[t]he requirement that the violation of federal law be ongoing is satisfied," which is met "when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent"; a factual predicate not alleged here. See McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010) (quotation omitted). And, finally, just as with the district attorney defendants, even assuming Ex parte Young's exception for prospective injunctive relief extended to some of plaintiff's claims, such as his post-hoc as-applied First Amendment challenge to his prior conviction, those claims would draw the court into the type of case from which it has been directed to abstain, as a matter of federalism. See Adkins, 464 F.3d at 463; Nivens, 444 F.3d at 241.

---

[14] The complaint on its face fails to allege the requisite factual basis of some connection by defendant Stein with the enforcement of the other unconstitutional acts that plaintiff's additional requested equitable remedies would purportedly redress.

ii.     Personal Capacity

For a complaint to allege claims against officials in their personal capacity, it must allege "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation" because "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017) (quotations omitted); see also Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). The complaint fails to allege factual matter supporting this causal connection. At most, it alleges that these defendants failed to act on plaintiff's notification that others were purportedly violating his rights, not that defendants Cooper, Stein, or McCrory affirmatively acted to deprive plaintiff of his constitutional rights or were otherwise so involved as to state a claim of liability under § 1983. Further, to the extent plaintiff seeks his stated injunctive relief against the state defendants, a claim against them in their personal capacity is the improper vehicle for such. See Kirby v. City of Elizabeth City, 388 F.3d 440, 452 n.10 (4th Cir. 2004) ("The other injunctive relief [plaintiff] seeks could only be awarded against the officers in their official capacities."); accord Feit v. Ward, 886 F.2d 848, 858 (7th Cir. 1989) ("Moreover, the equitable relief [plaintiff] requests—a declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals.").

Plaintiff's claims against the state defendants in both their official and personal capacities must be dismissed without prejudice. The court lacks subject matter jurisdiction over those claims against the state defendants to which the court has noted they are immune. Further, plaintiff fails

to state a plausible claim for relief against those defendants on the claims to which defendants are not facially immune.

C.    Plaintiff's Pending Motions

Because, as detailed herein, the court dismisses the entirety of plaintiff's claims against the defendants, plaintiff's pending motions for emergency injunctive relief, extension of time to serve, and to compel defendants to disclose their registered service of process agents are denied as moot. Further, plaintiff fails to show that discovery prior to disposition of the pending motions to dismiss is necessary, meaning that the court will deny those motions for preliminary discovery as well.

Plaintiff seeks "all the emails since Oct. 2017 to present from plaintiff and Ms. Hutten to Governor Cooper, NC Attorney General Stein, Assistant NC Attorney General Brian Nichols, [and] the Dare County Board Of Commissioners" and "[a]ll the calls for police service from plaintiff and Ms. Hutten from Oct. 2017 to present," including "police reports filed, the dispatcher's notes, any resulting internal communications, police officers notes, any and all documents related to the calls." ((DE 35) at 4).  Plaintiff also filed motion seeking to compel defendants to "produce all the alleged electronic communications defendants claim to be the basis for plaintiff's cyberstalking" conviction.  ((DE 44) at 5).  Plaintiff argues that this discovery prior to disposition of any motion to dismiss his complaint is necessary because the requested documents contain facts that defendants purportedly claim do not exist in their arguments for dismissal of his complaint.

The court has broad discretion to stay discovery pending resolution of a motion to dismiss. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see also Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when

authorized by these rules, by stipulation, <u>or by court order</u>." (emphasis added)). Although Rule 8 of the Federal Rules of Civil Procedure "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Iqbal</u>, 556 U.S. at 678-79. A Rule 12 motion attacks the sufficiency of a pleading, ensuring that conclusory allegations do not result in speculative or unfounded litigation; however, such motions only target the sufficiency of the pleadings and are not concerned with the merits of the claims. <u>See, e.g.</u>, <u>Miller v. Md. Dep't Nat. Res.</u>, 813 F. App'x 869, 873 (4th Cir. 2020) ("The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." (quotation omitted)). Accordingly, resolution of motions to dismiss should typically be resolved prior to the initiation of discovery, which looks to the factual merits of a case and beyond the facts merely alleged in the pleadings. <u>See generally</u> <u>Iqbal</u>, 556 U.S. at 686 ("Because [plaintiff's] complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); <u>Cross v. Ciox Health, LLC</u>, 438 F. Supp. 3d 572, 582 (E.D.N.C. 2020) ("Where defendant seeks dismissal of plaintiffs' claims as a matter of law, the issues raised can and should be addressed at this juncture, rather than following a period of discovery.").

Plaintiff has not demonstrated the need for discovery prior to disposition of the motions to dismiss. His proffered reasons for the period of discovery demonstrate that such would be premature: "These requested documents substantiate for plaintiff the continuing violation claims and the[y] are necessary for the Court to deny defendants res judicata motion. These documents <u>prove</u> defendants acts and omissions within the 3 year statute of limitations period for the purpose of the continuing violation claims." ((DE 35) at 2 (emphasis added)). This language refers to the merits of plaintiff's claims and, of course, references documents outside of the operative

pleadings.[15]  Accordingly, plaintiff's motion for a period of discovery prior to disposition of any motion to dismiss is denied.

Plaintiff has had the opportunity to alter his pleadings from his last suit before this court to the current one and has had the opportunity to amend his pleadings once in this proceeding. Neither time has plaintiff corrected deficiencies in prior pleadings or made an effort to draft the requisite "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   Finding "no evidence in the record that would indicate that if the plaintiff[] w[as] given further opportunities, [he] would be able to correct the deficiencies," North Carolina v. McGuirt, 114 F. App'x 555, 560 (4th Cir. 2004), the court will not, sua sponte, allow plaintiff another opportunity to amend in these proceedings.  Cozzarelli v. Inspire Pharms. Inc., 549 F.3d 618, 630 (4th Cir. 2008) (affirming district court's dismissal without leave to amend where, inter alia, "it [was] clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability").

As a final matter, plaintiff is admonished, as he has been in his other pending matter before this court, that "[w]hat unfortunately may pass as debate in public discourse is not acceptable in a court of law."  Felix v. Serv. Ins. Co., No. 2:20-CV-45-FL, 2020 WL 7232855, at *5 (E.D.N.C. Dec. 8, 2020) (quotation omitted).  In the course of this case, plaintiff has made filings containing insulting, irrelevant language, and other inappropriate and abusive invectives.  (See, e.g., (DE 45) at 4 (explaining that if the court wants to "abuse [him] mentally," "THEN the completely corrupt court should keep letting these assholes who represent the assholes who did nothing to stop the Hell On Earth keep disrespecting" the lives lost by cats on Hatteras Island); (DE 33) at 10 ("[T]he

---

[15]      The same is also true of plaintiff's second motion for discovery, which seeks to compel defendants to "produce all the alleged electronic communications defendants claim to be the basis for plaintiff's cyberstalking" conviction in order to support the merits of plaintiff's claim that the state criminal conviction was unfounded. ((DE 44) at 5).

Court becomes just another corrupt branch of government running the scam of Equal Protection Of Law and Justice For All.")).

Both plaintiff's opprobrious attacks on the court's integrity and on the opposing parties are unacceptable. The court is not assuaged by plaintiff's explanation that because he uses the term corrupt in its "literal" sense, he does not insult the court. ((DE 45) at 4, 12; see also id. at 7 ("Any justice sitting on the bench in this Court who does not agree [with plaintiff] has no business sitting on any bench in any Court.")).

Plaintiff is DIRECTED to cease making filings containing such insulting and irrelevant language or other inappropriate and abusive invective. Plaintiff is WARNED that, given the court's previous warning to plaintiff, further filings in this district containing such "redundant, immaterial, impertinent, or scandalous matter" may be struck by the court sua sponte. See Rule 12(f)(1). Moreover, attempts at further filings of this nature may result in dismissal of an action for abuse of the judicial process. Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991) (explaining that "[a] primary aspect of [a district court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process," which may include the "outright dismissal of a lawsuit, even though it "is a particularly severe sanction . . . within the court's discretion").

## CONCLUSION

Based on the foregoing, claims by and on behalf of the animal plaintiffs are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction and for failure to comply with the rules of this court. In addition, defendants' motions to dismiss (DE 18, 31, 37, 40) are GRANTED. All claims against Dare County defendants are DISMISSED WITH PREJUDICE and claims as to all other

defendants are DISMISSED WITHOUT PREJUDICE.  Further, plaintiffs' motions (DE 28, 30,

35, 38, 44) are DENIED.  The clerk is DIRECTED to close this case.

SO ORDERED, this the 8th day of June, 2021.


_____
LOUISE W. FLANAGAN
United States District Judge